## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Brian A. Reynaldo, Special Agent with the Drug Enforcement Administration (DEA), United States Department of Justice, being duly sworn, depose and state that:

### I. INTRODUCTION

1. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7); that is, I am an officer of the United States who is empowered by law to conduct investigations of and make arrests for offenses enumerated in 18 U.S.C. § 2516. I am currently investigating a drug-trafficking organization distributing crack cocaine, cocaine, and heroin in Hampton Roads.

2. I have been employed as a DEA Special Agent since 2006. I am currently assigned to Group 71, Norfolk District Office, Washington Division. I am responsible for conducting investigations of criminal violations of the Controlled Substances Act. I am familiar with the habits and the practices of individuals engaging in violations of controlled substance laws. I have actively participated in searches and seizures, surveillance, intelligence analysis, controlled deliveries, conspiracy investigations, arrests, interviews, interrogations, and Title III wire intercepts. I have searched numerous residences and businesses for items related directly and indirectly to drug distribution.

3. I have conducted many complex international and multi-jurisdictional investigations. I am familiar with the ways in which traffickers conduct their business, including, but not limited to the following: their methods of importing and distributing illegal drugs; their use of communications facilities; their transportation of platforms to arrange for and coordinate those distributions; their use of codes to conduct their transactions; and their financial vehicles to launder the proceeds of their illegal drug transactions.

4. I am familiar with the facts and circumstances of this investigation based on firsthand knowledge and information summarized in reports I have reviewed. I have compiled information derived from discussions and interviews with experienced law enforcement officers and agents. I have not set forth each and every fact learned during the course of this investigation but have only set forth those facts that I believe are relevant to establish probable cause to obtain an arrest warrant.

5. I make this affidavit in support of a criminal complaint and arrest warrants for Samuel SWINNEY, Keith JOHNSON, and Michael DRAKE. This affidavit will show probable cause to believe that:

    a. On or about January 27, 2023 and January 31, 2023, SWINNEY knowingly and intentionally distributed quantities of a mixture and substance containing a detectable amount of Cocaine, a Schedule II controlled substance, in Portsmouth, Virginia within the Eastern District of Virginia, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C). This affidavit will further show probable cause to believe that on or about February 23, 2023, SWINNEY knowingly and intentionally possessed with intent to distribute a quantity of a mixture and substance containing a detectable amount of Cocaine, a schedule II controlled substance in Portsmouth, Virginia within the Eastern District of Virginia, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C);

    b. On or about January 31, 2023, JOHNSON knowingly and intentionally distributed quantities of a mixture and substance containing a detectable amount of Cocaine, a Schedule II controlled substance, in Portsmouth, Virginia within the Eastern District of Virginia, in violation of 21 U.S.C. § 841(a)(1) &

(b)(1)(C). This affidavit will further show probable cause to believe that on or about February 23, 2023, JOHNSON, knowing that he had been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess a firearm which had previously been shipped and transported in interstate and foreign commerce, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8); and

c. On or about February 23, 2023, DRAKE, knowing that he had been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess a firearm which had previously been shipped and transported in interstate and foreign commerce, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).

6. Your Affiant has become aware of the facts and circumstances described below through my personal observation, my training and experience, information provided by other law enforcement officers, witness interviews, and suspect interviews. Since this Affidavit is being submitted for the limited purposes of securing arrest warrants, I have not included each and every fact known concerning this investigation. Rather, I have set forth only those facts that are necessary to establish probable cause for a criminal complaint and arrest warrants.

II. **FACTS SUPPORTING PROBABLE CAUSE**

7. In 2022, members of the Portsmouth Police Department arrested an individual who agreed to work with law enforcement as a confidential source. The individual, hereafter Confidential Source 1 (CS-1), named Samuel SWINNEY as a source of supply for crack Cocaine in Portsmouth, Virginia. CS-1 stated that SWINNEY employed numerous associates at a known residence on Staunton Avenue in Portsmouth to distribute his narcotics.

8. The 2400 block of Staunton Avenue is known to be a high-crime area within the City of Portsmouth. Numerous police reports document calls for gunshots being fired, weapons being seized, and people being treated for gunshot wounds in this area. When members of the Portsmouth Police Department and DEA Norfolk District Office (hereafter the Investigative Team) conducted surveillance on this block in early 2023, they discovered that an open–air drug market was being run out of 2403 Staunton Avenue, Portsmouth, Virginia, a residence associated with Samuel SWINNEY (hereafter referred to as the Residence). Through my own investigation and the investigation and surveillance of members of the Investigative Team, I have learned the following facts:

9. From approximately January 27, 2023 through February 10, 2023, the Investigative Team conducted surveillance of the Residence through a variety of means. The Investigative Team observed that the Residence was being used by SWINNEY and others as a distribution point for narcotics. Throughout this time period, investigators observed over 10 individuals, including SWINNEY, JOHNSON, and DRAKE, conduct over 500 suspected hand-to-hand narcotics transactions and observed numerous individuals in possession of suspected firearms.

10. Specifically, during this time frame, the Investigative Team observed:

   a. SWINNEY conduct over 100 suspected hand-to-hand narcotics transactions,

   b. JOHNSON conduct over 40 suspected hand-to-hand narcotics transactions and carry a suspected firearm on one occasion, and

   c. DRAKE conduct over 35 suspected hand-to-hand narcotics transactions and carry a suspected firearm on three occasions.

11. During this same time frame, investigators interdicted the recipients of some of the suspected hand-to-hand transactions from different individuals, three of those instances are described below:

   a. On January 27, 2023, the Investigative Team observed SWINNEY conduct a hand-to-hand transaction with an individual driving a maroon Honda Accord at 2403 Staunton Avenue in Portsmouth. After the transaction, the Investigative Team followed and detained the driver of the Honda Accord. The driver did not make any stops prior to being detained by the Investigative Team. The Investigative Team recovered approximately 0.944 gram of a substance from the driver's pocket. The substance was sent to Virginia Department of Forensic Science's Eastern Laboratory and found to contain Cocaine. The driver of the vehicle told the Investigative Team post-*Miranda* that the driver purchased $7 of "crack cocaine" from a male. The driver did not know the name of the street, but the description provided was consistent with Staunton Avenue.

   b. On January 31, 2023, the Investigative Team observed SWINNEY conduct a hand-to-hand transaction with an individual driving a black Jeep at 2403 Staunton Avenue in Portsmouth. After the transaction, the Investigative Team followed and detained the driver of the black Jeep. The driver did not make any stops prior to being detained by the Investigative Team. The Investigative Team recovered approximately .410 gram of a substance from a can the driver was holding. The substance was sent to the Virginia Department of Forensic Science's Eastern Laboratory and found to contain Cocaine.

    c. On January 31, 2023, the Investigative Team observed JOHNSON conduct a hand-to-hand transaction with an individual driving an orange Chevy Equinox at 2403 Staunton Avenue in Portsmouth. After the transaction, the Investigative Team followed and detained the driver of the orange Chevy Equinox. The driver did not make any stops prior to being detained by the Investigative Team. The Investigative Team recovered approximately 2.45 grams of a substance which was sent to the Virginia Department of Forensic Science's Eastern Laboratory and found to contain Cocaine from the vehicle.

12. On February 23, 2023, the Investigative Team executed state search warrants for the Residence and multiple arrest warrants which resulted in the arrests of SWINNEY, JOHNSON, DRAKE, and others.

13. Shortly before the execution of these warrants, the Investigative Team observed:

    a. SWINNEY place what appeared to be a controlled substance in the bushes and inside of a trash can within the curtilage of the Residence;

    b. JOHNSON transport a suspected firearm inside of the Residence, and

    c. DRAKE place a suspected firearm in the awning of the Residence and then a short time later, move the suspected firearm inside the Residence.

14. During the execution of the warrants, the Investigative Team recovered:

    a. Within the curtilage of the residence, approximately 55.59 grams of Cocaine in the bushes and approximately 37.42 grams of crack cocaine inside of a trash can. The Investigative Team observed SWINNEY place items in these same exact locations.

    b. Inside the residence, two handguns, a Glock 19X 9mm semi-automatic pistol, and a Smith & Wesson, model 5906 9mm semi-automatic pistol were seized inside of a back bedroom on the top shelf; both had a round in the chamber. The Investigative Team previously observed JOHNSON and DRAKE take firearms into the residence. One of the occupants of the Residence advised the Investigative Team that DRAKE placed a firearm in the closet where both were ultimately found.

    c. From SWINNEY's person, the Investigative Team seized $1,785 of United States Currency (USC); from JOHNSON's person, the Investigative Team seized $1,280 of USC; and from DRAKE's person the Investigative Team seized a small quantity of marijuana and $900 of USC.

15. On April 6, 2023, while SWINNEY was incarcerated at Portsmouth City Jail, he made multiple recorded calls using the Portsmouth City Jail telephone system.

    a. At 6:24pm, SWINNEY used his account to call a co-conspirator (CC-1). During this call, CC-1 and JOHNSON told SWINNEY they had both very recently been pulled over by law enforcement.

    b. At 6:34pm, SWINEY used another inmate's account to again call CC-1.

- SWINNEY: *"I don't like that."*
- CC-1: *"Oh, yeah, yeah (repeated word multiple times)."*
- SWINNEY: *"Not at all bro, not at all."*
- CC-1: *"Yeah, they, they fishing."*
- \*\*\*
- SWINNEY: *"I'm talking about, off the gri... completely fall all the way off the map."*
- CC-1: *"Yeah."*
- SWINNEY: *"You have to, you have to."*
- \*\*\*
- SWINNEY: *"Man there's no fucking way. Listen to me. No fucking way."*

- \*\*\*
- SWINNEY: *"Hey, fuck. Bro at least give 90 days. Aight?"*
- CC-1: *"Yeah. No question"*
- SWINNEY: *"Talking about no movement, no nothing. I don't give a fuck...If the Lord calls you and said he got a million dollars."*
- CC-1: *"Yeah."*
- SWINNEY: *"Can you do that for me?"*
- CC-1: *"Yeah, no question."*
- SWINNEY: *"Can you do that for me?"*
- CC-1: *"Yeah, yeah."*
- \*\*\*
- SWINNEY: *"Fuck the smaller picture. Fuck the event."*
- CC-1: *"Yeah, I know there's a bigger picture. Yeah I know."*
- SWINNEY: *"I need you to act like it bro."*
- CC-1: *"Yeah."*
- SWINNEY: *"They already got me in this mother fucker bro."*
- CC-1: *"Yeah."*

c. Based on my training and experience, after SWINNEY was told that two of his co-conspirators were pulled over while he was in jail, SWINNEY attempted to avoid detection by law enforcement by using another inmate's account to speak with CC-1. SWINNEY directed CC-1 to stop all "movement" of narcotics distribution for at least 90 days. SWINNEY emphasizes his point later in the conversation by stating, *"they already got me in this mother fucker"* referring to jail. SWINNEY appeared concerned that individuals with whom he might have been conspiring to distribute narcotics would also be incarcerated.

16. At the time of the offenses alleged, SWINNEY, JOHNSON, and DRAKE were each previously convicted of felonies punishable by imprisonment for a term exceeding one year. SWINNEY, JOHNSON and DRAKE knew that they were previously convicted felons.

17. The firearms recovered from 2403 Staunton Avenue Portsmouth, Virginia and described in paragraph 14(b) were manufactured outside of the Commonwealth of Virginia.

## III. CONCLUSION

18. Based on the above facts, I believe there is sufficient probable cause to charge:

    a. Samuel SWINNEY with Distribution of Cocaine and Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C),

    b. Keith JOHNSON with Distribution of Cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), and

    c. Michael DRAKE with Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).

Further your affiant sayeth naught.

_____
Brian A. Reynaldo, Special Agent
Drug Enforcement Administration

Sworn and subscribed to before me this _____ day of May 2023.

_____
UNITED STATES MAGISTRATE JUDGE